OPINION
{¶ 1} Defendant-appellant, David Williams, appeals from his conviction and sentence in the Butler County Court of Common Pleas on one count of trafficking in cocaine and one count of possession of cocaine.
 {¶ 2} On July 3, 2001, Agent Randy Lambert of the Butler County Sheriff's Office was contacted by a confidential informant, later identified as James Wagers, who told Lambert that a David Williams was going to sell him (Wagers) four ounces of cocaine for $4,100 in the parking lot of a Meijer's store in Fairfield, Ohio. Lambert met with Wagers at the sheriff's office that same day to arrange a "controlled buy" of the cocaine from Williams. Also present at this meeting were Sergeant Jon Sons, and Agents Jim Blume and Morgan Dahlman.
 {¶ 3} Not having $4,100 in cash available, the officers took the amount they did have, which was $1,500, and "balled it up" with a rubber band in order to make it appear to be the proper amount. The officers also obtained a description of Williams from the Ohio Bureau of Motor Vehicles, indicating that Williams was a black male, who was about 5'10" in height, and weighed about 200-220 lbs. The officers contacted the Fairfield Police Department to advise them of the situation that was about to unfold. The officers and Wagers then traveled to the Fairfield Police Department's headquarters, where Agent Blume conducted a pat-down search of Wagers and thoroughly searched Wagers' vehicle to ensure that he did not already have any drugs in his possession at the time of the controlled buy. After determining that Wagers did not, Blume gave him the $1,500, which had been photocopied by the officers to facilitate its later identification.
 {¶ 4} Afterwards, Wagers drove to the Meijer's store in Fairfield to meet with Williams. Agents Lambert, Blume and Dahlman, and Sergeant Sons followed Wagers in undercover police vehicles. When they arrived at Meijer's, the officers observed Wagers placing a call on his cell phone. Lambert called Wagers and learned that Williams wanted to meet Wagers in the Forest Fair Mall parking lot. Wagers got out of his vehicle and walked over to the Forest Fair Mall's parking lot, with the officers following him in their surveillance vehicles. The officers observed a black male, who was later identified as Williams, walk towards Wagers. Williams led Wagers to an area behind a cinder-block wall, outside of the officers' view. Moments later, Wagers and Williams came out from behind the wall, and headed in opposite directions. After Wagers gave the officers a "thumbs up," signaling that the transaction had taken place, the officers moved in to apprehend Williams. After identifying themselves as being with the sheriff's office, the officers ordered Williams to get on the ground. Williams did not immediately comply, but instead, made a 180-degree turn and threw the money to the ground. The officers recovered the money and identified it as the same money given to Wagers to make the controlled buy. One of the officers recovered a plastic baggie from Wagers that contained an off-white substance later determined to be 110.72 grams of cocaine.
 {¶ 5} Williams was indicted for trafficking in cocaine in an amount exceeding 100 grams, a violation of R.C. 2925.03(A), and for possession of cocaine in the same amount, a violation of R.C. 2925.11(A). Both charges were second-degree felonies. See R.C. 2925.03(C)(4)(e) and R.C. 2925.11(C)(4)(d).
 {¶ 6} Williams moved to suppress all physical evidence obtained from him at the time of his arrest on the grounds that the officers lacked a warrant or probable cause to believe that he had committed a crime. A hearing was held on Williams' suppression motion on September 25, 2001. Agent Lambert testified on the state's behalf. The trial court subsequently overruled Williams' motion to suppress.
 {¶ 7} At Williams' trial, the state presented the testimony of Agents Lambert, Blume and Dalman, and Sergeant Sons, among others. Defense counsel cross-examined Lambert at length about his suppression hearing testimony. Lambert essentially acknowledged that his testimony at the suppression hearing was misleading in several instances, but he asserted that he testified as he did to protect the identity of one of the sheriff's office's confidential informants (i.e., Wagers).
 {¶ 8} After the case had gone to the jury, defense counsel moved to dismiss the charges against Williams on the basis of the misleading testimony that Lambert gave at the suppression hearing. The trial court did not immediately rule on the motion, but, instead, took it under advisement. The jury then returned guilty verdicts on both the possession and trafficking charges.
 {¶ 9} Following the announcement of the jury's verdict, the prosecutor disclosed that on the Friday afternoon preceding the trial, she telephoned defense counsel and informed him, "if he hadn't figured it out already, * * * that James Wagers was the confidential informant." Defense counsel responded that he thought the prosecutor had gotten the current case confused with another. Defense counsel argued that if he had known Wagers was the confidential informant, he would have presented his case much differently.
 {¶ 10} The trial court found that Williams had not been prejudiced by Lambert's false and misleading testimony, and overruled his motion to dismiss. The trial court sentenced Williams to four years imprisonment on each count, and ordered the sentences to be served concurrently.
 {¶ 11} Williams appeals from his conviction and sentence, raising the following assignment of error:
 {¶ 12} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT REFUSED TO DISMISS THE CHARGES AGAINST HIM."
 {¶ 13} Williams essentially argues that Lambert's false and misleading testimony at the suppression hearing prejudiced his right to a fair trial, and, therefore, the trial court erred by overruling his motion to dismiss the charges against him.
 {¶ 14} Lambert's testimony at the suppression hearing was false or misleading in several respects. First, Lambert's testimony created the false impression that the sheriff's office's confidential informant and Wagers were two different persons, when, in fact, they were one and the same. Specifically, Lambert's suppression hearing testimony falsely implied that there was a second confidential informant involved in the case, whom Lambert described only as a "white male." It later came out at trial that the white male was, in fact, Lambert's fellow officer, Agent Blum.
 {¶ 15} Second, Lambert provided misleading testimony about the amount of cash Wagers was given to make the controlled buy. At the suppression hearing, Lambert initially indicated that Wagers had received $4,100 from the police to use in making the controlled buy. Lambert later acknowledged during the hearing that Wagers actually had received only $2,500 to make the buy. Still later at trial, it was discovered that Wagers may have received as little as $1,500 to make the buy.
 {¶ 16} Finally, Lambert falsely indicated at the suppression hearing that Wagers had not been searched prior to the time the police gave him the money to make the controlled buy. However, at trial, Blume testified that he had carefully searched both Wagers and his vehicle for drugs before Wagers was given the money to make the controlled buy.
 {¶ 17} At trial, Lambert acknowledged under cross-examination by defense counsel that, at the suppression hearing, he had deliberately misled defense counsel into believing that there was a third person involved in the drug transaction:
 {¶ 18} "Q. Ok. And then I asked [at the suppression hearing] how much money was given to James Wagers [to make the controlled buy]? And what did you testify?
 {¶ 19} "A. I'm going to assume the forty-one hundred dollars for that transaction.
 {¶ 20} "Q. Ok. Now why did you-why are [you] * * * assuming that?
 {¶ 21} "A. Because you were on a fact finding mission to identify the confidential informant[;] I wish to reveal absolutely nothing about the confidential informant, including the monies that were given to the confidential informant. I did not clearly state, forty-one hundred dollars. I stated I assumed, forty-one hundred dollars.
 {¶ 22} "Q. Ok. So, was your effort here to try to mislead me into thinking that there was another person involved?
 {¶ 23} "Absolutely." (Emphasis added.)
 {¶ 24} When defense counsel asked Lambert why he gave the answers he did at the suppression hearing, Lambert responded as follows:
 {¶ 25} "The reason that that question was answered in that way, again, think of the circumstances, I've got a confidential informant doing a transaction with, uh, David Williams. David Williams was there[;] if I say a confidential informant met with David Williams, David Williams already knows James Wagers was present. By stating through the use of a confidential informant, if they choose to believe there was a third person, that is their prerogative. I simply stated through the use [of] a confidential informant, at which time, James Wagers was."
 {¶ 26} When defense counsel again asked Lambert if Lambert attempted to mislead him at the suppression hearing, Lambert responded:
 {¶ 27} "I'm not — I guess, I'm just not comfortable with the term mislead. But, if that's — the term you want to use, yes, there was an attempt there to keep the confidential's [sic] safety — bottom line, trying to keep the confidential informant safe."
 {¶ 28} Still later during Lambert's cross-examination at trial, the following exchange occurred between defense counsel and Lambert regarding the white male confidential informant about whom Lambert had spoke at the suppression hearing, subsequently identified as Blume:
 {¶ 29} "Q. Well, would you agree you were — at least, it appears you were attempting to mislead me into thinking that this * * * white male was not — uh, was — was the informant —
 {¶ 30} "* * *
 {¶ 31} "A. Well, again, this motion was for probable cause to arrest and you were on a fact finding tour of the confidential informant.
 {¶ 32} "Q. So, you took it upon yourself to mislead me? Is that what you're testifying to? In other words, the answer is, yes, you did mislead me?
 {¶ 33} "A. I answered truthfully, but those answers could of [sic] been taken in a way that would mislead to a third party."
 {¶ 34} While Lambert's motive for providing defense counsel with false and misleading answers at the suppression hearing may have been laudable, his decision to testify as he did was unwise and even disturbing. Prior to testifying at the suppression hearing, Agent Lambert took an oath "to tell the truth, the whole truth and nothing but the truth." Yet Lambert skirted his duty to testify truthfully at the suppression hearing. The courts in this state and its officers, including criminal defense attorneys, have a right to expect that law-enforcement officers will take seriously their obligation to testify truthfully.
 {¶ 35} Furthermore, it was unnecessary for Lambert to testify in a misleading and untruthful manner in order to protect the identity of one of his office's confidential informants. If Lambert believed that truthfully answering one of defense counsel's questions would cause him to divulge a confidential informant's identity, Lambert could have refused to answer the question, as Blume, in fact, later did at trial.[1]
The prosecutor could have then sought a protective order from the trial court on Lambert's behalf. However, by providing defense counsel with false and misleading testimony at the suppression hearing, Lambert has turned what should have been a relatively simple case into an unnecessarily complex one.
 {¶ 36} Even though Lambert's false and misleading testimony at the suppression hearing was reprehensible, the trial court was correct in assessing whether or not Williams had been prejudiced by that testimony. In cases where prosecutorial or police misconduct is alleged, the focus should be placed on whether the defendant received a fair trial, and not on the culpability of the prosecutor or other law-enforcement officer. See, generally, Smith v. Phillips (1982), 455 U.S. 209, 219,102 S.Ct. 940, 947 ("[t]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor").
 {¶ 37} Williams did not suffer material prejudice from all of Lambert's false and misleading testimony. For instance, it does not appear that Williams was materially prejudiced by Lambert's false and misleading testimony regarding the amount of money that Wagers was given to make the controlled buy. Williams asserts that if he had known that the drug transaction actually involved $1,500 instead of $4,100, he would have produced evidence to show that $1,500 was such a "ridiculously low" price for the amount of cocaine involved that it would have called into question the actual occurrence of the transaction itself.
 {¶ 38} However, Williams was aware by the end of the suppression hearing that the police had provided Wagers with only $2,500 to make the controlled buy, rather than $4,100 — the price upon which Wagers and Williams initially agreed. Furthermore, during the trial, defense counsel had Lambert count the dollar amount of the photocopies the police made of the money Wagers used to make the controlled buy. It was discovered that the police might have used as little as $1,500 to make a controlled buy of cocaine that was worth $4,100. Defense counsel raised this issue several times during his closing arguments. At one point, defense counsel argued that it was "ridiculous" to believe that "drug dealers don't count the money" they receive during drug transactions. The jury simply chose not to be swayed by defense counsel's arguments on this matter.
 {¶ 39} Nevertheless, we conclude that Williams did suffer material prejudice as a result of Lambert's false and misleading testimony at the suppression hearing. In particular, we are troubled by Lambert's deliberate attempt to mislead defense counsel by making it appear that there was a third person in addition to Wagers and Williams involved in the controlled buy, namely, a white male confidential informant. Although the prosecutor disclosed to defense counsel before the trial that Wagers was the confidential informant, the prosecutor failed to clarify the identity of the white male[2] informant or the role he played in arranging the controlled buy. Defense counsel was left with the impression that two confidential informants had been involved in the drug transaction, but that neither would be testifying at trial. Defense counsel may well have believed that this factual circumstance would leave him with an opportunity to argue to a jury that reasonable doubt existed in this case. But such an opportunity disappeared when it became clear at trial that the white male informant to whom Lambert had been referring was his fellow officer, Blume.
 {¶ 40} The most compelling argument that Williams suffered prejudice as a result of Lambert's false and misleading testimony is that Lambert indicated at the suppression hearing that Wagers had not been searched at the time he was given the money to make the controlled buy. At trial, however, Blume testified that he carefully searched both Wagers and his vehicle before giving money to Wagers and sending him to make the controlled buy.
 {¶ 41} Lambert's false testimony at the suppression hearing created the impression that the defense could easily prove reasonable doubt simply by establishing that the state lacked proof that Wagers did not already have the drugs on or about his person when the controlled buy allegedly occurred. Lambert's false and misleading testimony led defense counsel to believe that he had a stronger case than he did, thereby causing defense counsel to overlook defense strategies he might otherwise have pursued, or to pass over plea bargains he might otherwise have accepted. In particular, we note that defense counsel represented, and the prosecutor did not dispute, that the state offered Williams a deal, which he subsequently rejected, whereby Williams would have been given a 17-month sentence in exchange for a guilty plea. Such a sentence would have been less than half of what Williams eventually received.
 {¶ 42} Moreover, while defense counsel failed to raise this specific argument in support of his motion, we nevertheless conclude that it should be recognized under the plain error doctrine pursuant to Crim.R. 52(B), because the police misconduct that occurred in this case created a manifest miscarriage of justice that clearly affected the outcome of the proceedings. State v. Hill, 92 Ohio St.3d 191,2001-Ohio-141, syllabus. Therefore, we conclude that Williams was prejudiced by this false testimony and deserves a new trial.
 {¶ 43} Finally, we disagree with Williams' assertion that the charges against him should be dismissed altogether. Williams has cited no authority that would support dismissal of the charges on the basis of the police misconduct present here, nor have we found any. Instead, we conclude that the proper remedy for the type of misconduct that rendered Williams' trial unfair is a remand for a new trial. See, generally, Statev. Staten (1984), 14 Ohio App.3d 78, 85.
 {¶ 44} Williams' sole assignment of error is sustained to the extent indicated, and this cause is remanded for further proceedings consistent with this opinion and in accordance with law.
YOUNG, P.J., and WALSH, J., concur.
[1] While under cross-examination, Blume refused to answer any question related to the confidential informant's identity. During his cross-examination, the prosecutor received permission from the Butler County Sheriff's Office to allow Blume to reveal at trial the confidential informant's identity, which Blume eventually did.
[2] Both Wagers and Williams are black.